Gray, J.
 

 Upon a previous occasion we reversed a judgment recovered by these plaintiffs and ordered a new trial, upon the ground that the act of the deceased in attempting to board the moving train was reckless and dangerous and contributed to the resulting injury. As the case was then presented, the fact was •established by the evidence for the plaintiffs that the speed of the •train was from four to six miles an hour at the time the deceased jumped on, and though it was substantially admitted that the .attempt was negligence on his part, it was argued that the act was justified because requested or directed by the conductor of the train. That direction was in these words: “ If you are going, jump on.” But we held that that circumstance constituted no excuse for the dangerous act, inasmuch as it created no emergency calling for the immediate exercise of judgment in the choice
 
 *368
 
 between two dangers, and that it amounted to nothing more than, a notification that the train would not stop, or go slower. Upon, this appeal the plaintiffs endeavor to sustain another judgment, recovered against the company upon the new trial. -They say that, the case, though “practically the same,” differs from the previous-case in a vital feature; namely, with respect, to the speed of the train. Upon the new trial evidence was given by three witnesses that the speed of the train was between one and two miles an hour. Of these witnesses, two had previously testified to a speed of four to six miles an hour and the other had not testified upon that subject. In view of the doubt justly resting upon the character and correctness of this evidence, we might very properly say that-it was open to the court to take as the fact concerning the speed of the train the evidence given by the other witnesses in the case-for both parties, which placed it at about' six miles an hour.
 

 But we shall, for the purposes of the case, assume that the evidence as now given left it a question of fact as to how fast the train was moving past the station. We will accept that rate of speed deemed by the plaintiffs as most favorable to their contention, and still we must hold that the plaintiffs were not entitled to a recovery on their case. The conclusion was irresistible from the facts that-the conduct of the plaintiffs’ intestate was negligent and that his act contributed to his injuries and death. He was described as a quick, active man, thirty-six years of age and in good health. He had lived several years in sight of the station and had frequently taken the train there. On the morning in question, accompanied by a friend, he went to the station and stood with him upon the freight: platform of the station until the train came in sight. The deceased then descended the steps leading to the lower or passenger platform and waited there, at a point some four or five fpet away from the steps. The train slacked its motion but did not stop, and as the passenger car approached, the conductor, standing at the forward end, said to them, “ If you are going, jumpo on.” The deceased made an effort to do so, but, in some way not exactly described, was caught and rolled between the moving train and the freight platform, near to which he was standing. Very probably, in the attempt to get upon the moving car, the deceased, not reckoning upon the nearness of the higher and projecting freight platform, struck against it, was thrown down and was forced between it and the train. Upon the facts, in what respect was the defendant guilty of negligence and how was it responsible for the injury which resulted to the deceased?- That the train did not-stop at a particular or at the usual place, and ran beyond the station, would not charge the defendant with negligence in the sense that it thereby caused the unfortunate result complained of. The deceased was under no obligation to board the train. In fact he had no especial right to be carried by it. He had no ticket; but even if he had one, that would not have placed the company under any contract to carry him upon that train. If its servants disregarded the time-table notice as to that station upon the morning in question, that fact did not entitle the deceased to disregard the-usual prudential considerations which should govern human action,.
 
 *369
 
 nor did it subject the defendant to a liability for the consequences of an attempt to get upon a train in motion.
 

 The invitation, request or command of the conductor, however his words may be regarded, in no respect compelled the deceased to leave the place of safety upon the platform or to change his position. • He was a free agent and had the opportunity of choice between staying where he was and complying with the conduct- or’s request He could have waited for the train to come to a full stop, or for another train. The question of his convenience or inconvenience is of no consequence and cannot enter as an element of the case. If a person, when in a safe .position and under no stress of circumstances, attempts to get upon a train moving past him, at no matter what rate of speed, while in such a proximity to a known and prominent obstruction, such as was this freight platform, as to render the consequences of a false or mis-step possibly, if not certainly, serious, wo think that but one inference and opinion can be entertained. The act would be hazardous, and however slight the chances of injury might have seemed to him, and whatever the motive or influence which induced the act, the individual would alone be responsible for the injury which might result to him. Sufficient responsibility is imposed upon these corporations in the operation of their roads already, without adding to it a further responsibility for the consequences of rash and unnécessary acts. The railroad and the trains upon it charge all persons having anything to do with or about them with the knowledge of possible dangers, and their presence impose the duty of being vigilant and prudent, if responsibility for an occurring injury is to be escaped. It js unnecessary -to" refer to authorities, bearing upon- the - question-before- us. That has been done by Judge Peckham in his opinion when this case was formerly before us. The only difference now is, that the respondents claim the speed of the train, as testified to, was so very moderate as to take this case out of the effect of our previous decision and to make it one for the jury to pass upon with respect to the question of whether the act of the deceased was negligent. It is true that upon the previous appeal we laid stress upon the fact that the rate of speed was so rapid as to compel the judgment to pronounce it a reckless act to attempt to board the train. But we did not hold that if a train was moving much more slowly, the attempt, under the circumstances disclosed here, might be warrantable, or would raise a question for the jury to consider.
 

 It was said that there may be cases in which an attempt to get. on or off a moving train would not be regarded as negligence as matter of law. And so there may be, but this is not one of those cases, inasmuch as the deceased was under no coercion nor obligation, and had no especial right' to be carried by that train. He was so placed that while safe if he remained quiet and where he was, he was bound to know, and must have known, that if he endeavored to get upon the moving train and should fail to accomplish it upon the second, or should take a misstep, he incurred the risk of being thrown against the neighboring freight platform and
 
 *370
 
 injured. The case of a passenger who alights from a train moving past his destination, in complianc'e with the.-direction of a servant of the corporation, as in the
 
 Filer
 
 case, 49 N. Y., 47, cannot be altogether likened to the present case. In such a case there may be a stress of circumstances, in the passenger being obliged to choose between being carried away from the place where his duties or ties compelled his presence, and of endeavoring to alight, upon the direction or suggestion of the railroad employe. The question, then, might very properly be left to the jury for them to pronounce upon the character of the act; but even then, as it was held in the
 
 Filer
 
 case, if the cars were moving at such a rapid rate as to charge the person with knowledge of the danger in the attempt, the act would be reckless and no recovery could be had. To alight from, or to board a train in motion, is a negligent and hazardous act, which can only be made to appear excusable when, in the situation of the person, he is under such a coercion of circumstances as to raise a fair question a,s to whether he was really in the free possession and use of his faculties and judgment.
 
 Solomon
 
 v.
 
 Manhattan R. R. Co.,
 
 103 N. Y., 437; 3 N. Y. State Rep., 636. Judge Andrews, in the case cited, held substantially as I have just stated. In his view there is less excuse in boarding a moving train than in alighting from it, and the distinction is obvious. The option in the former case- is between an unnecessary and possibly dangerous act and the mere inconvenience of being left to take a later train.
 

 These views lead to the conclusion that the judgment below should be reversed and a new trial ordered, with costs to abide the event